Filed 6/16/23  P. v. Devault CA2/3

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | B320573 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BA221615) |
| v. | |
| LAMONT DEVAULT, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Lisa B. Lench, Judge.  Affirmed.

Lamont Devault, in pro. per.; Sharon Fleming, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, and Colleen M. Tiedemann, Deputy Attorney General, for Plaintiff and Respondent.

Lamont Devault appeals from an order denying his petition for resentencing under Penal Code[1] section 1172.6.[2] His appellate counsel filed a brief asking us to independently review the appeal under *People v. Wende* (1979) 25 Cal.3d 436 (*Wende*).[3] Doing so, we affirm the order.

---

[1] All further undesignated statutory references are to the Penal Code.

[2] Effective June 30, 2022, section 1170.95 was renumbered to section 1172.6, with no change in text. (Stats. 2022, ch. 58, § 10.)

[3] Our Supreme Court recently held that there is no right to *Wende* review in section 1172.6 appeals and set forth a procedural framework to follow when counsel determines no arguable issues exist. (*People v. Delgadillo* (2022) 14 Cal.5th 216, 221–222.) Consistent with that framework, after we gave notice to Devault of his right to file a supplemental brief, Devault filed a brief raising several issues, requiring that we render an opinion evaluating them. (*Id.* at pp. 231–232.)

## I.     The underlying conviction

In 2002, Devault and his codefendant Ruben Jones were jointly tried for the murder of John Boyakins and the attempted murders of Fernando M., Larry W., and Gregory R.[5]

The evidence at trial showed that on June 25, 2000, gunfire erupted in a parking lot outside a party where several members of a criminal street gang were present, resulting in Boyakins's death and Gregory R., Larry W., and Fernando M. being wounded.  The shooting occurred in alleged retaliation for a shooting that a gang had carried out two days earlier.  Police found more than twenty .223-caliber bullet casings on the sidewalk area in front of the parking lot, all fired from the same gun.  Additional casings and rounds recovered from the rear of the parking lot were from other guns, leading police to believe seven guns were fired during the incident, including, inferentially some from the partygoers.

Informant Clarence H. later told police that he was at Jones's house with several gang members when Devault proposed a drive-by shooting at the party in retaliation for the earlier shooting.  Three vehicles left to carry out the attack, with Devault and Jones—both armed with AK-47's—getting into a van which had a middle seat removed to enable a gunman to open the

---

[4]     Our recitation of the factual background is derived in part from *People v. Devault* (Mar. 11, 2005, B162631) [nonpub. opn.] rehearing denied and opinion modified April 8, 2005.  The facts are summarized only to describe the basis of Devault's convictions.  (See, e.g., *People v. Woodell* (1998) 17 Cal.4th 448, 459–460.)

[5]     A count pertaining to another victim was dismissed.

3

sliding door and shoot from the van while sitting on the floor. Minutes later, Clarence heard gunshots. When Devault returned, he bragged about having shot some people and was mad that Jones did not fire any shots. Jones said the van's sliding door had jammed and he couldn't get it open. Stanley M. told detectives that he was also at Jones's house that evening, and that Devault was very upset and was trying to get others to join in retaliating for the prior shooting.

Devault testified that he was in Michigan the evening of the shooting. Jones disavowed gang membership, that he allowed gang members to congregate at his house (including the evening of the subject incident), and that he owned guns.

A jury found Devault guilty of the first degree murder of Boyakins (§ 187, subd. (a); count 1) with true findings on principal gun use allegations and personal gun use allegations, including that Devault personally and intentionally discharged a firearm which proximately caused great bodily injury and death to Boyakins (§§ 12022.53, subds. (b), (c), (d), (e)(1), former 12022.5, subd. (a)). The jury also found Devault guilty of the willful, deliberate and premeditated attempted murders of Fernando M., Larry W., and Gregory R. (§§ 664, 187, subd. (a); counts 2, 4 & 5) with true findings on principal gun use allegations and personal gun use allegations (§§ 12022.53, subds. (b), (c), former 12022.5, subd. (a)). The jury found Devault guilty of possession of a firearm by a felon. (Former § 12021, subd. (a)(1); count 6.) The jury found true gang allegations as to all counts. (§ 186.22, subd. (b)(1).) The jury found Jones guilty of second degree murder and three counts of attempted murder, with true findings on principal firearm use and gang allegations as to all counts.

4

The trial court sentenced Devault to life plus 80 years-to-life.

On direct appeal, a different panel of this Division modified the sentence in ways irrelevant here and affirmed the judgment as modified. (*People v. Devault, supra*, B162631.) Devault did not challenge the sufficiency of the trial evidence on appeal.

## II. The petition for resentencing

In April 2019, Devault filed a form entitled "petition for writ of habeas corpus" requesting that the trial court strike the section 12022.53, subdivision (d), enhancement pursuant to section 1385 and Senate Bill No. 620 (2017–2018 Reg. Sess.). In June 2019, the trial court denied Devault's petition because Senate Bill No. 620 was inapplicable. Devault did not appeal that order.[6]

In July 2021, Devault filed a "petition for writ of habeas corpus" that reasserted the issue in his 2019 petition and requested reduction of his first degree murder conviction to second degree murder under Senate Bill No. 1437 (2017–2018 Reg. Sess.) (Senate Bill 1437) because he was convicted under a now invalid natural and probable consequences theory. The

---

[6] The record also contains March and July 2019 orders denying two other "habeas corpus" petitions, but those petitions are not in the record. One petition apparently sought to challenge fines imposed at Devault's 2002 sentencing, while the other sought resentencing under section 1172.6. In denying the latter petition, the trial court concluded Devault was the actual killer and had not been convicted under a now-invalid theory. In so concluding, the court erroneously stated that there were no jury instructions for aiding and abetting based on the natural and probable consequences doctrine. Devault did not appeal these orders.

5

petition attached excerpts from the prosecution's arguments at trial and the opinion affirming as modified the judgment of conviction. The trial court appointed counsel to represent Devault.[7]

The prosecution opposed Devault's petition, arguing, among other things, that Devault was ineligible for resentencing because he was the actual killer who acted with express malice aforethought. With the opposition, the prosecution submitted the jury instructions from Devault's trial and requested judicial notice of the record associated with Devault's direct appeal.

The parties submitted on the briefs. In April 2022, the trial court denied the petition, reasoning that Devault "was apparently the actual shooter."

This appeal followed. Court-appointed appellate counsel filed an opening brief that raised no issues and asked this court to independently review the record under *Wende, supra*, 25 Cal.3d 436.[8] This court notified Devault that his attorney had failed to find any arguable issues and that he could submit by brief or letter any arguments he wished this court to consider.

Devault filed a supplemental brief advancing several reasons why the trial court erred in summarily denying his petition. According to Devault, there was evidence he was not

[7] The minute order reflecting the appointment references Devault's December 27, 2021 petition; however, the only 2021 petition in the record was executed in July 2021. We therefore assume that the court intended to reference the July 2021 petition.

[8] We have granted counsel's request for judicial notice of the records from Devault's direct appeal and motion to augment the record with Devault's petition and the People's opposition.

6

the actual killer, the Court of Appeal in its opinion affirming his judgment of conviction found that someone else might have shot Boyakins, the prosecutor argued he was guilty under the natural and probable consequences doctrine, and the true finding on the section 12022.53, subdivision (d), firearm enhancement does not preclude relief because it does not establish he acted with malice aforethought.[9]

We also asked the parties to supplementally brief whether Devault was convicted of murder under a natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime.

## DISCUSSION

### I. Overview of Senate Bill 1437

"Effective January 1, 2019, the Legislature passed Senate Bill 1437 'to amend the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life.' [Citation.] In addition to substantively amending sections 188 and 189 . . . , Senate Bill 1437 added [former] section 1170.95, [now section 1172.6], which provides a procedure for convicted murderers who could not be

---

[9] Devault also claims error with respect to the trial court's incorrect statement in its 2019 decision regarding the absence of an aiding and abetting natural and probable consequences instruction. However, Devault did not appeal that order, and the 2022 order which is the subject of this appeal did not contain that same error, and we therefore decline to address the matter further.

7

convicted under the law as amended to retroactively seek relief." (*People v. Lewis* (2021) 11 Cal.5th 952, 959 (*Lewis*).)

Section 1172.6, subdivision (a), states that a person convicted of "felony murder or murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime, attempted murder under the natural and probable consequences doctrine, or manslaughter" may file a petition for resentencing "when all of the following conditions apply: [¶] (1) A complaint, information, or indictment was filed against the petitioner that allowed the prosecution to proceed under a theory of felony murder, murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime, or attempted murder under the natural and probable consequences doctrine. [¶] (2) The petitioner was convicted of murder, attempted murder, or manslaughter following a trial or accepted a plea offer in lieu of a trial at which the petitioner could have been convicted of murder or attempted murder. [¶] (3) The petitioner could not presently be convicted of murder or attempted murder because of changes to Section 188 or 189 made effective January 1, 2019."

If the petitioner files a "facially sufficient" petition (i.e., one containing the above allegations), the petitioner is entitled to the appointment of counsel, if requested. (*Lewis*, *supra*, 11 Cal.5th at p. 970.) The court must direct the prosecutor to file a response to the petition, permit the petitioner to file a reply, and determine if the petitioner has made a prima facie case showing entitlement to relief. (*Id*. at pp. 959–960.)

In determining whether the petitioner has carried his burden of making the requisite prima facie showing, the superior court properly examines the record of conviction, "allowing the court to distinguish petitions with potential merit from those that are clearly meritless." (*Lewis*, *supra*, 11 Cal.5th at p. 971.) However, "the prima facie inquiry under [section 1172.6], subdivision (c) is limited. Like the analogous prima facie inquiry in habeas corpus proceedings, ' "the court takes petitioner's factual allegations as true and makes a preliminary assessment regarding whether the petitioner would be entitled to relief if [the petitioner's] factual allegations were proved. If so, the court must issue an order to show cause." ' . . . 'However, if the record, including the court's own documents, "contain[s] facts refuting the allegations made in the petition," then "the court is justified in making a credibility determination adverse to the petitioner." ' " (*Ibid*.) A denial at the prima facie stage is only appropriate if the record of conviction demonstrates that the petition is ineligible for relief as a matter of law. (*Id*. at p. 960.)

We independently review a trial court's determination of whether a petitioner has made a prima facie showing.[10] (*People v. Harden* (2022) 81 Cal.App.5th 45, 52.)

---

[10] We assume without deciding that the at-issue section 1172.6 petition is not barred as a successive petition. (See *People v. Farfan* (2021) 71 Cal.App.5th 942, 946 [entertaining successive § 1172.6 petition where new legal authority undermined basis of denial of prior petition].)

**II.    Devault is ineligible for section 1172.6 relief as a matter of law**

Devault contends that his first degree murder conviction was premised on the now invalid natural and probable consequences theory.  Based on the instructions and the verdict, we disagree that the jury relied on that theory in finding Devault guilty of first degree murder.

With respect to the murder and attempted charges, the trial court instructed the jury with CALJIC Nos. 8.10 (Murder Defined), 8.11 (Malice Aforethought Defined), 8.20 (Deliberate and Premeditated Murder), 8.66 (Attempted Murder), 8.70 (murder is classified into two degrees); and CALJIC No. 8.12 (provocative act murder).  The trial court also instructed on aiding and abetting with CALJIC Nos. 3.00 and 3.01.

Devault's jury was also instructed on the now invalid natural and probable consequences doctrine via CALJIC Nos. 3.02 and 6.10.5.  CALJIC No. 3.02 told the jury that a person who aids and abets the commission of a crime is not only guilty of those crimes, but any crimes committed by a principal that is a natural and probable consequence of the crime originally aided and abetted.  To find the "defendant" guilty of murder and attempted murder under this theory, the following four elements had to be satisfied:  (1) the crime or crimes of assault with a firearm was committed; (2) the defendant aided and abetted those crimes; (3) a coprincipal in that crime committed the crimes of murder and attempted murder; and (4) murder and/or attempted murder were a natural and probable consequence of the crime of assault with a firearm.  (CALJIC No. 3.02.)

The jury was also instructed with CALJIC No. 6.10.5, which defined a conspiracy as an agreement between two or more

10

persons with the specific intent to commit the crime of murder or assault with a firearm. "A member of a conspiracy is not only guilty of the particular crime that to his knowledge his confederates agreed to and did commit, but is also liable for the natural and probable consequences of any crime of a co-conspirator to further the object of the conspiracy" even if that crime was not originally intended. Further, the jury had to determine whether the defendant was a member of a conspiracy to commit the originally agreed upon crimes, and, if so, "whether the crime alleged in Counts One, Two, Four and Five was perpetrated by a co-conspirator in furtherance of that conspiracy and was a natural and probable consequence of the agreed upon criminal objective of that conspiracy."

Notwithstanding that CALJIC Nos. 3.02 and 6.10.5 stated the now improper natural and probable consequences theory of murder, other instructions and the jury's verdict show that the jury did not convict Devault under that theory. Instead, the jury convicted him as the actual killer with the requisite malice.

That is, the trial court also instructed the jury on the firearm allegations with CALJIC No. 17.19.5, which stated: "It is alleged in Counts One, Two, Four and Five that the defendant Lamont D[e]vault intentionally and personally discharged a firearm and proximately caused death to John Boyakins as to Count One during the commission of the crimes charged. [¶] If you find the defendant Lamont Devault guilty of one or more of the crimes thus charged, you must determine whether the defendant Lamont Devault intentionally and personally discharged a firearm and proximately caused death to John Boyakins as to Count One only in the commission of those felonies. . . . [¶] The term 'intentionally and personally

11

discharged a firearm,' as used in this instruction, means that the defendant himself must have intentionally discharged it."

The jury was also instructed, "It is alleged in Counts One and Two and Four and Five that the defendant Lamont Devault personally used a firearm during the commission of the crimes charged. [¶] If you find the defendant Lamont Devault guilty of one or more of the crimes charged . . . you must determine whether the defendant Lamont Devault personally used a firearm in the commission of those felonies. . . . [¶] The term 'personally used a firearm,' as used in this instruction, means that the defendant must have intentionally displayed a firearm in a menacing manner, intentionally fired it, or intentionally struck or hit a human being with it."

By finding the personal gun use allegations true as to Devault, the jury necessarily rejected a natural and probable consequences theory of murder. An element of that theory was that a coprincipal or coperpetrator committed the crimes of murder and attempted murder. But only Devault was charged with and found guilty of personal gun use allegations. His coprincipal Jones was charged with and found guilty of only principal gun use allegations. Therefore, Devault, having been found to have discharged a weapon causing great bodily injury, was the only principal in the crime that committed murder, which was otherwise defined to require malice aforethought.

*People v. Offley* (2020) 48 Cal.App.5th 588, does not undermine this conclusion. In that case, there was evidence that at least three individuals shot at the victim's car, killing him. However, only two men, Offley and Keller, were charged with crimes arising out of that shooting. The trial court instructed the jury on the natural and probable consequences doctrine in

12

conspiracy cases:  " 'A member of a conspiracy is not only guilty of the particular crime that to his knowledge his confederates agreed to and did commit, but is also liable for the natural and probable consequences of any crime of a co-conspirator to further the object of the conspiracy, even though that crime was not intended as part of the agreed upon objective and even though he was not present at the time of the commission of the crime.' "  (*Id.* at p. 599.)  A jury convicted Offley of, among other crimes, murder and attempted murder with a true finding on a personal gun use allegation under section 12022.53, subdivision (d).  The court found that the true finding under section 12022.53, subdivision (d), did not preclude section 1172.6 relief, because the existence of that general intent enhancement did not show a defendant acted with malice aforethought.  (*Offley*, at p. 598; accord *In re Ferrell* (2023) 14 Cal.5th 593 [§ 12022.53, subd. (d), requires only intent to discharge a firearm, not subjective awareness of risk or disregard for life].)

Here, we agree that the true finding on the section 12022.53, subdivision (d), enhancement did not supply the missing element of malice aforethought, and the Attorney General concedes it could not do so.  Instead, unlike in *Offley* where there was evidence of at least three shooters, here only two principals were charged with the crimes and only one, Devault, was charged with and found to have personally and intentionally discharged a firearm causing great bodily injury and death to Boyakins.  Under these circumstances, the true finding established that Devault was the sole shooter among the principals to the crime.  Stated otherwise, the jury was required to find that one of the principals committed murder, and because Devault was the only one who was found to have discharged a

13

weapon causing death to Boyakins, the jury necessarily found he was the actual killer. As such, the jury did not rely on the natural and probable consequences doctrine and instead must have relied on the malice theories of murder to convict him.

The jury was otherwise instructed that once it found any defendant guilty of murder, it was required to find the defendant acted willfully, deliberately, and with premeditation before convicting that defendant of first degree murder. Devault's conviction of first degree murder,[11] combined with the jury's personal use of a firearm findings, demonstrate he is ineligible for resentencing under section 1172.6 as a matter of law.

## III. Devault's remaining contentions

Devault raises several contentions in his supplemental brief, none of which have merit.

First, Devault excerpts a portion of the opinion addressing his direct appeal as evidence that he was not the actual shooter. We said there was evidence that Boyakins's fatal chest wound was a through-and-through injury, as opposed to the .223-caliber bullet fragments dislodged from Boyakins's hip and fired from the street from the gun alleged to have been Devault's. We said that "there was ample evidence from which the jury could have reasonably concluded someone other than Devault shot Boyakins." But we made this statement in the context of rejecting codefendant Jones's argument that the jury should not have been instructed on the provocative act theory of murder because there was no reasonable view of the evidence that

---

[11] Devault's conviction preceded *People v. Chiu* (2014) 59 Cal.4th 155, 167, which held that a defendant cannot be convicted of first degree premeditated murder under the natural and probable consequences doctrine.

anyone other than Devault shot Boyakins. Our discussion of the propriety of an instruction was not a factual finding but a mere legal conclusion that substantial evidence supported the provocative act instruction. (See, e.g., *People v. Burney* (2009) 47 Cal.4th 203, 246 [instructional error reviewed for substantial evidence].) Our statements thus in no way supersede the actual factfinder's unambiguous conclusion that Devault shot Boyakins.

Second, Devault points to statements the prosecutor made in closing about the natural and probable consequences theory of first degree murder. Those comments notwithstanding, the jury did not convict Devault under that theory, as we have said. Moreover, the prosecutor's argument, if anything, endorsed the theory that Devault was the shooter and Jones merely assisted Devault by providing weapons. The prosecutor stated, in pertinent part: "if you believe that defendant Jones simply assisted by providing the guns that were used, or the gun that was used, with the intent to encourage or facilitate or instigate the crime knowing the unlawful purpose of . . . defendant De Vault [*sic*], [Jones] is likely responsible for the murder."

Finally, Devault's claims regarding alleged exculpatory evidence lack merit. According to Devault, he could not have been the actual killer because the van's owner testified that the van's sliding door was operational, contrary to other evidence that the door would not open during the shooting. Section 1172.6, however, does not supply a means to attack the trial evidence. (See *People v. Strong* (2022) 13 Cal.5th 698, 713 [resentencing proceedings under the statute involve "prospective relief from a murder conviction that was presumptively valid at

the time," not the correction of "errors in past factfinding"].)[12] Nonetheless, the van owner's statement does not contradict Clarence's trial testimony regarding the condition of the van's door at the time of the shooting, given that the owner was not alleged to have been in the van during the shooting and therefore could not speak to the door's condition at that time.

---

[12] Devault's further complaints about the "credence" we lent the informants' statements in our opinion addressing Devault's direct appeal are not cognizable for the same reason.

## DISPOSITION

The April 2022 order denying Lamont Devault's July 2021 petition for resentencing is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


HEIDEL, J.*


We concur:


LAVIN, Acting P. J.


EGERTON, J.

---

\*      Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.